UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

BRIAN JAMES WEST,            )
                            )
            Plaintiff,       )        No.     2:14-cv-00078
                            )        Senior Judge Nixon
v.                          )        Magistrate Judge Brown
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security    )
                            )
            Defendant.       )

To: The Honorable John T. Nixon, Senior United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is the Plaintiff's Motion for Judgment on the Administrative

Record. (Docket Entry 17). The Magistrate Judge **RECOMMENDS** that the Motion be

**DENIED** and the Commissioner's decision be **AFFIRMED**.

## I.      Procedural History

The Plaintiff initially filed a Title XVI application for Supplemental Security Income on

March 3, 2011, and a Title II application for Period of Disability and Disability Insurance

Benefits on March 5, 2011. (Docket Entry 11, p. 80-81).[1] The alleged onset date of disability

was listed as March 19, 2010. (Docket Entry 11, p. 80-81). Each application was denied in June

2011. (Docket Entry 11, p. 80-81). Upon reconsideration, the applications were again denied in

November 2011. (Docket Entry 11, p. 82-83).

At the Plaintiff's request, an administrative hearing took place on January 30, 2013.

(Docket Entry 11, p. 53). On April 15, 2013, the administrative law judge (ALJ) issued an

unfavorable decision, concluding that the Plaintiff was not "disabled" within the meaning of the

---

[1] The pages referenced from the administrative record (Docket Entry 11) are the black numbers at the bottom right corner of each page.

Social Security Act. (Docket Entry 11, p. 37-48). The Appeals Council declined to review the

ALJ's decision. (Docket Entry 11, p. 1). The Plaintiff thereafter filed a Complaint and a Motion

for Judgment on the Administrative Record in this Court. (Docket Entries 1 and 17). The

Defendant has responded. (Docket Entry 21). The matter is properly before the Court.

## II.      Review of the Record

### A. Medical Evidence

#### 1. Function Report Submitted by the Plaintiff

The Plaintiff submitted a function report on March 28, 2011. (Docket Entry 11, p. 183-

190). In it, he stated that pain prevents him from sitting for more than one hour or stand for more

than one hour at a time. (Docket Entry 11, p. 183). He stated that he needs to lie down to relieve

his pain. (Docket Entry 11, p. 183). During the day, the Plaintiff takes care of his son and fixes

meals that take an hour or less to make. (Docket Entry 11, p. 184-185). He does laundry once a

week with the help of his wife. (Docket Entry 11, p. 185). He goes outside once every three to

four days, can drive a car, and can shop in stores and on the computer. (Docket Entry 11, p. 186).

The Plaintiff tries to visit a friend once a week for an hour or two. (Docket Entry 11, p. 187). He

stated that he has limited abilities to walk long distances, lift heavy items, squat, bend, stand,

reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. (Docket Entry 11, p. 183,

188). He stated that he could only walk one hundred yards before stopping for a ten to fifteen

minute break and that his concentration is affected by his pain. (Docket Entry 11, p. 188, 190).

He also stated that he handles stress fine and that he uses a cane, a back brace, and a

transcutaneous electrical nerve stimulator (TENS) unit. (Docket Entry 11, p. 189). Both the back

brace and TENS unit were prescribed by a doctor, but the Plaintiff stated that the TENS unit did

not help at all so he stopped using it. (Docket Entry 11, p. 189). The Plaintiff stated that he was

taking "Hydro/Apap" medicine which was accompanied by nausea and a loss of appetite. (Docket Entry 11, p. 190).

### 2. Vocational Analysis Worksheet

Vocational consultant L. Dalton completed a vocational analysis worksheet for the Plaintiff on June 16, 2011. (Docket Entry 11, p. 198-200). Dalton concluded that the Plaintiff was limited to light exertional duties. (Docket Entry 11, p. 198). Dalton also noted that the Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Docket Entry 11, p. 198). Dalton opined that the Plaintiff could perform the duties of his previous fast food job. (Docket Entry 11, p. 199).

### 3. Tennessee Spine, Joint, & Pain Management

On December 29, 2010, the Plaintiff presented to Tennessee Spine, Joint, & Pain Management for lower back pain and a bulging disk. (Docket Entry 11, p. 221-223). He reported that his pain was a five out of ten. (Docket Entry 11, p. 244). After noting that the Plaintiff was obese, the physician assistant, Mr. Shannon Brandfass, ordered x-rays of the Plaintiff's lumbar region. (Docket Entry 11, p. 225). During the visit, the Plaintiff was given a TENS unit, a lumbar brace, spinal injections, Ultram pain medication, and a heel lift. (Docket Entry 11, p. 228). The Plaintiff also filled out a "low back disability questionnaire" during the visit. (Docket Entry 11, p. 242). In it, he stated that (1) painkillers give him complete relief from pain; (2) it is painful to care for himself; (3) he could lift very light weights; (4) pain prevented him from walking more than one-half mile; (5) pain prevents him from sitting for more than one hour; (6) pain prevents him from standing for more than one hour; (7) he can sleep well only by using tablets; (8) pain has restricted his social life; (9) he can manage journeys less than one hour but the pain is bad; and (10) his pain is gradually worsening. (Docket Entry 11, p. 242). Based on the x-rays taken

during the visit, Ms. Brandfass was under the impression that the Plaintiff suffered from degenerative disc disease, lumbar foraminal encroachment, left leg length inequality, and mild compensatory scoliosis. (Docket Entry 11, p. 243). The Plaintiff returned on December 31, 2010, and Mr. Brandfass noted tenderness along the L3-L5. (Docket Entry 11, p. 230).

On January 5, 2011, the Plaintiff remarked that the lumbar brace worked. (Docket Entry 11, p. 237). The Plaintiff received diagnostic facet injections at the L3-4, L4-5, and L5-S1on January 11, 2011. (Docket Entry 11, p. 233). The diagnosis was lumbar spondylosis without myelopathy and lumbalgia. (Docket Entry 11, p. 233, 241). On that day, the Plaintiff reported that his pain was a three or four out of ten and that activity would cause it to rise to a six out of ten. (Docket Entry 11, p. 233). On January 18, 2011, Mr. Brandfass gave the Plaintiff several therapeutic facet injections at the L3-4, L4-5, and L5-S1 levels. (Docket Entry 11, p. 231). On that day, the Plaintiff reported his pain as a six out of ten, and that activity increased his pain to a level six or seven out of ten. (Docket Entry 11, p. 231). The Plaintiff returned for a follow-up visit on February 4, 2011. (Docket Entry 11, p. 226). Ms. Brandfass noted that the Plaintiff's pain was unchanged with injections but that the TENS unit had been helpful. (Docket Entry 11, p. 227).

### 4. Consultative Examination Report

On May 31, 2011, a State consultative examiner, Dr. Donita Keown, M.D., examined the Plaintiff. (Docket Entry 11, p. 261). Dr. Keown remarked that the Plaintiff ambulated without an assistive device and had a normal toe lift, heel walk, and one-foot stand exercise. (Docket Entry 11, p. 261). Upon examining the Plaintiff's thoracolumbar column,[2] Dr. Keown noted no

---

[2] The thoracolumbar region refers to the thoracic and lumbar parts of the spine. Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 1920 (32nd ed. 2012).

asymmetry or spasms, dorsiflexion at 80 degrees with left lateral flexion 25 degrees, right lateral

flexion 20 degrees, and extension 25 degrees. (Docket Entry 11, p. 261).

### 5. Physical Residual Functional Capacity (RFC) Assessment

State consultant Dr. Charles S. Settle, M.D., provided physical RFC assessment for the

Plaintiff on June 15, 2011. (Docket Entry 11, p. 262-270). He opined that the Plaintiff could

occasionally carry twenty pounds, frequently carry ten pounds, stand or walk with normal breaks

for six hours in an eight-hour workday using a cane to balance on uneven surfaces, sit for six

hours in an eight-hour workday, and push and pull without limits. (Docket Entry 11, p. 263). Dr.

Settle found that the Plaintiff could never climb ladders, ropes, or scaffolds, but could

occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (Docket Entry 11, p.

264). Based on inconsistencies in the Plaintiff's reports of functional limitations, notably reports

that he could walk up to 100 yards versus his report that he could walk up to one half of a mile,

Dr. Settle found that the Plaintiff's claims of functional limitations were only partially credible.

(Docket Entry 11, p. 269). State consultant Dr. Christopher Fletcher, M.D., affirmed this

assessment in October 29, 2011. (Docket Entry 11, p. 329).

### 6. Dr. Khan Li, M.D.

On August 8, 2011, the Plaintiff saw Dr. Khan Li at Neurological Associates for low

back pain and right leg pain above the knee. (Docket Entry 11, p. 271). Dr. Li found chronic L4-

S1 disc herniation and low back pain without any radicular pain but believed the main problem

was the Plaintiff's weight which placed stress on his spine. (Docket Entry 11, p. 271-272). Dr. Li

did not recommend surgery, but instead referred the Plaintiff to a physical therapist and

discussed lifestyle modifications to lower the Plaintiff's weight. (Docket Entry 11, p. 272).

### 7. Cookeville Medical Center

The Plaintiff was treated at the Cookeville Medical Center records from October 2010 to January 2013. (Docket Entry 11, p. 274-328, 388-427, 432-463). On October 1, 2010, the Plaintiff complained of chronic severe back pain, stating that his pain was a ten on a scale of zero to ten. (Docket Entry 11, p. 319). Upon reviewing an x-ray of the Plaintiff's lumbar spine, Dr. Pushpendra K. Jain, M.D., stated that the lumbar spine was normal and both scroliac joints were normal. (Docket Entry 11, p. 321). During a follow-up visit on October 8, 2010, the Plaintiff complained of back pain. (Docket Entry 11, p. 314). A crossed straight leg raise was positive. (Docket Entry 11, p. 315). Again on October 29, 2010, the Plaintiff reported back pain. (Docket Entry 11, p. 311). On December 2, 2010, Dr. Jain ordered a CT of the Plaintiff's lumbar spine. (Docket Entry 11, p. 310). Dr. Daniel F. Coonce, M.D., from Premiere Diagnostic Imaging performed the CT and found a small posterior central left disc bulge at L5-S1. (Docket Entry 11, p. 246, 250, 310). The Plaintiff again reported back pain on December 10, 2010 and December 16, 2010. (Docket Entry 11, p. 305, 307).

The Plaintiff next presented on March 22, 2011. (Docket Entry 11, p. 302). Nurse Practitioner Jacqueline Howard surmised that the Plaintiff had lumbar disc disorder with myelopathy and ordered a MRI of the Plaintiff's lumbar spine. (Docket Entry 11, p. 304). The MRI findings included large central disc herniation at L5-S1, minimal disc bulge at L4-5, and facet joint degenerative arthritis without evidence of spinal stenosis or recess stenosis. (Docket Entry 11, p. 249, 304). The Plaintiff was given Mobic, Meloxicam, and Hydrocodone-Acetaminophen. (Docket Entry 11, p. 304). The Plaintiff complained of back pain on April 21, 2011, reporting his pain a seven out of ten, and complained of back pain on May 23, 2011, reporting his pain a six out of ten. (Docket Entry 11, p. 296, 299). He was given Hydrocodone-Acetaminophen and Mobic. (Docket Entry 11, p. 298, 301). The Plaintiff again reported back

pain on June 22, 2011. (Docket Entry 11, p. 292). Meloxicam, Mobic, and Hydrocodone-Acetaminophen were again prescribed. (Docket Entry 11, p. 294). On July 22, 2011, the Plaintiff stated that his back pain was a five out of ten. (Docket Entry 11, p. 289). He was still smoking one pack of cigarettes per day. (Docket Entry 11, p. 289). Hydrocodone-Acetaminophen was prescribed. (Docket Entry 11, p. 290). He reported his back pain was a six out of ten on August 23, 2011, and an eight out of ten on September 23, 2011. (Docket Entry 11, p. 280, 286). Hydrocodone-Acetaminophen was again prescribed. (Docket Entry 11, p. 282).

From October 2011 to January 2013, the Plaintiff reported pain in his back, ranging from six to eight out of ten. (Docket Entry 11, p. 397, 406, 408, 410, 412, 415, 418, 420, 422, 435, 439, 444, 451, 454, 458). A MRI of the Plaintiff's lumbar spine on April 15, 2013, revealed degenerative disc changes at L4-5 and L5-S1 and posterior central disc protrusion at L5-S1 with a radial tear of the annulus fibrosis centrally. (Docket Entry 11, p. 464). Throughout this time, the Plaintiff was still taking prescribed Hydrocodone-Acetaminophen. (Docket Entry 11, p. 218, 399, 409, 411, 416, 419, 421, 423, 436, 440, 452, 455, 459). The Plaintiff was still smoking tobacco products daily in August 2012 and January 2013. (Docket Entry 11, p. 443, 450).

### 8. Star Physical Therapy

The Plaintiff received physical therapy for his back pain from September 29, 2011 to November 30, 2011. (Docket Entry 11, p. 336). During his first evaluation and treatment session on September 29, 2011, the Plaintiff reported his pain as an eight out of ten. (Docket Entry 11, p. 339). Although the Plaintiff reported no significant changes in pain or symptoms after his first treatment, he noted that he felt less stiff and more flexible after treatment. (Docket Entry 11, p. 343). On October 7, 2011, the Plaintiff complained that his pain and symptoms had increased since the last visit. (Docket Entry 11, p. 345). Several days later, on October 11, 2011, the

Plaintiff again noted that he was sore after the last physical therapy session but that he was pleased with his overall functional progress, noting his pain was a four out of ten. (Docket Entry 11, p. 347). The Plaintiff noted no significant change in pain or symptoms on October 14, 2011. (Docket Entry 11, p. 349). On October 18, 2011, the Plaintiff reported a decrease in pain and symptoms from his last visit. (Docket Entry 11, p. 351). After experiencing pain bending over, the Plaintiff reported his pain as a seven out of ten on November 17, 2011. (Docket Entry 11, p. 356). The Plaintiff reported increased pain on November 18, 2011 and November 21, 2011. (Docket Entry 11, p. 358, 360). The Plaintiff last received physical therapy on November 30, 2011, stating that he had no significant change in pain or symptoms since beginning treatment. (Docket Entry 11, p. 362). During the visit, the Plaintiff successfully rode a stationary bike for twenty minutes. (Docket Entry 11, p. 362).

### 9. Cookeville Regional Medical Center

The Plaintiff provided medical records from Cookeville Regional Medical Center from March 2, 2012 to May 24, 2012. (Docket Entry 11, p. 367-387). He was admitted for head pain on March 2, 2012 and March 16, 2012. (Docket Entry 11, p. 373-387). A CT of the Plaintiff's head was normal. (Docket Entry 11, p. 381). The Plaintiff was next seen on May 24, 2012 for an ear infection. (Docket Entry 11, p. 367-372). The Plaintiff presented on August 2, 2013 for low back pain and trouble walking. (Docket Entry 11, p. 8). He was discharged after receiving pain medication. (Docket Entry 11, p. 10).

### 10. Medical Source Statement

On August 30, 2012, Dr. Jain completed a medical source statement for the Plaintiff. (Docket Entry 11, p. 428-431). Dr. Jain stated that the Plaintiff could frequently and occasionally lift or carry less than ten pounds. (Docket Entry 11, p. 428). The Plaintiff could stand at least two

hours in an eight-hour workday and sit for about four hours in an eight-hour workday. (Docket Entry 11, p. 428). Pushing and pulling would be limited in the lower extremities, and the Plaintiff could be required to periodically alternate between sitting and standing. (Docket Entry 11, p. 429). Dr. Jain stated that the Plaintiff's pain would constantly interfere with his attention and concentration and would prevent him from tolerating even a low stress job. (Docket Entry 11, p. 429). The Plaintiff would need to take a break every thirty minutes for thirty minutes, and the Plaintiff would miss work as a result of his impairments more than four times a month. (Docket Entry 11, p. 429). The Plaintiff could never crouch or crawl but could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, balance, or kneel. (Docket Entry 11, p. 430). The Plaintiff's ability to reach in all directions was limited, and he would need to avoid even moderate exposure to vibration and hazards.[3] (Docket Entry 11, p. 430-431).

### 11. Cumberland Physical Therapy

The Plaintiff attended six physical therapy treatments at Cumberland Physical Therapy in June and July of 2013. (Docket Entry 11, p. 19-34). It was noted that myofascial release resulted in some improvement in motion and upright posture. (Docket Entry 11, p. 32). However, the Plaintiff still complained of back pain. (Docket Entry 11, p. 32).

### B.  The Administrative Hearing

During the administrative hearing, the Plaintiff discussed his back pain which arose from a childhood playground accident and gradually grew worse as the Plaintiff grew older. (Docket Entry 11, p. 60-62). According to the Plaintiff, he has two bulging discs with degenerative joint arthritis in his lower back which cause him pain. (Docket Entry 11, p. 60). He stated that the pain limits his shopping trips to fifteen to thirty minutes and prevents him from picking up objects from off the floor. (Docket Entry 11, p. 60). The act of bending over, the Plaintiff stated, leaves

---

[3] Although Dr. Jain marked "humidity," it appears that he intended to mark "hazards."

him bedridden for two to three days and the pain is not alleviated by pain medication. (Docket Entry 11, p. 61).

During the week, the Plaintiff takes care of his son for two full days and one half day. (Docket Entry 11, p. 63). About once a month he required his mother's help while taking care of his son. (Docket Entry 11, p. 63). The Plaintiff testified that "the only thing that . . . creates a small damper for about an hour is the hydrocodone, 10 milligram." (Docket Entry 11, p. 62). He reported that a TENS unit and spinal injections did not alleviate his pain, but that he experienced some relief from a back brace. (Docket Entry 11, p. 66). The Plaintiff also stated that he had gone to physical therapy for three months but that the physical therapist said there was no reason to keep returning because there was no improvement. (Docket Entry 11, p. 67).

The Plaintiff stated that he can stand and sit for a maximum of fifteen to thirty minutes at a time and can only walk for about fifteen minutes at a time. (Docket Entry 11, p. 67-68). He stated that the heaviest item he could lift would be under ten pounds and that he drives once every few days to get groceries. (Docket Entry 11, p. 68). During the day, he lies flat on a bed five to six times, fifteen to thirty minutes each time. (Docket Entry 11, p. 69). The Plaintiff stated that could not do housework or yardwork. (Docket Entry 11, p. 69-70). He also stated that pain disrupts his sleep and interferes with his concentration, making him fidgety and agitated. (Docket Entry 11, p. 70-71).

The ALJ noted that the Plaintiff's doctors had recommended that he lose weight and asked the Plaintiff how he had tried to lose weight. (Docket Entry 11, p. 72). The Plaintiff stated that he tries to be more active and adopted a healthier diet. (Docket Entry 11, p. 72-73). The Plaintiff also testified that he was still smoking but was in the process of quitting. (Docket Entry 11, p. 58).

The ALJ then asked a vocational expert questions based on the following RFC: a range of light work where the Plaintiff could not climb ladders, ropes, or scaffolds; could not work around dangerous or moving machinery or unprotected heights; could occasionally climb stairs and ramps, balance, stoop, bend from the waist to the floor, kneel, crouch, or crawl; and needed an at will sit-stand option. (Docket Entry 11, p. 76-77). The vocational expert testified that the Plaintiff could not return to his prior jobs but that these other jobs were available: (1) photo copy machine operator (401 in Tennessee; 26,984 nationally); (2) collator operator (753 in Tennessee; 44,718 nationally); and (3) school bus monitor (193 in Tennessee; 16,975 nationally). (Docket Entry 11, p. 77). If the Plaintiff felt pain up to seven on a scale of zero to ten, the vocational expert's conclusion would be unchanged. (Docket Entry 11, p. 78). The vocational expert testified that pain between eight to ten on a scale of zero to ten would eliminate work. (Docket Entry 11, p. 78). Work would also be eliminated if the Plaintiff would be absent from the job up to ten percent of the time, about twice a month. (Docket Entry 11, p. 78).

### C. The ALJ's Findings

The ALJ set forth the following findings of fact and conclusions of law:

> (1) The [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2013.
>
> (2) The [Plaintiff] has not engaged in substantial gainful activity since March 19, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The [Plaintiff] has the following severe impairments: obesity and back problems (20 CFR 404.1520(c) and 416.920(c)) . . . in that they place restrictions on the claimant's ability to engage in work activity.
>
> (4) The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.929). No treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity.

(5) After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [Plaintiff] must avoid all climbing of ropes, scaffolds, and ladders. He is limited occasionally to climbing ramps and stairs; balancing; stooping – bending from waist to floor; kneeling; crouching; and crawling. He is unable to work around moving mechanical parts and high, exposed areas. Claimant has no mental impairments. . . .

(6) The [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The [Plaintiff] was . . . a younger individual age 18-49[] on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not an issue in this case because the [Plaintiff's] past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10) Considering the [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 19, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Docket Entry 11, p. 42-48).

### III.    Legal Standards

**A.  Standard of Review**

Applicants for period of disability, disability insurance benefits, and supplemental security income may seek judicial review of the Social Security Commissioner's decision to deny these benefits. 42 U.S.C. §§ 405(g) and 1383(c)(3). Ultimately, the Commissioner is responsible for deciding whether the applicant is "disabled" within the definition of the Social Security Act and entitled to benefits. *Id.* §§ 405(h) and 1383(c)(1)(A). The court's review is limited to determining two things: (1) whether the Commissioner's decision is supported by

substantial evidence and (2) whether the Commissioner followed the applicable rules and regulations in assessing the applicant's claims of disability. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citation omitted). The Sixth Circuit defines substantial evidence as "less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). When the evidence in the record supports the Commissioner's conclusion and also the conclusion advocated by the applicant, the Commissioner's decision should be upheld. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). However, the Commissioner's decision may not be supported by substantial evidence if the Commissioner did not follow the applicable rules and regulations. *Gentry*, 741 F.3d at 722 (citation omitted).

### B. Administrative Proceedings

The Commissioner follows a five-step process to determine if a claimant is disabled within the meaning of the Social Security Act and entitled to benefits. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The Act's definition of "disability" is codified at 42 U.S.C. §§ 423(d) and 1382c(a). First, if the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). Second, if the claimant's physical or mental impairments, or combination of impairments, is not severe or does not satisfy the duration requirements, the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). Third, if the claimant's impairment or impairments meet or equal a listed impairment and satisfy the duration requirements, the claimant is presumed to be disabled and the inquiry ends. *Id.* §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). Fourth, if the claimant can still perform past relevant work based on his RFC, the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). Fifth, if the claimant can perform other work based on

his RFC, age, education, and work experience, the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The burden of proof is on the claimant for the first four steps. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citation omitted). At the fifth step, the burden of proof shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's [RFC] and vocational profile." *Id.* (citation omitted).

## IV.    Analysis

### A.  Claims of Error

The Plaintiff raises the following claims of error: (1) the ALJ failed to consider the impact of obesity on the Plaintiff's disability and failed to have any analysis at Step 3; (2) the ALJ erred by rejecting Dr. Jain's opinion as a treating physician; (3) the ALJ erred by only accepting a portion of Dr. Settle's opinion; (4) the ALJ erred in finding that the vocational expert had identified a significant number of jobs; and (5) the ALJ erred in finding that the Plaintiff was not credible in his complaints of pain. (Docket Entry 18, p. 16-21).

### B.  Impact of Obesity at Step 3

The Plaintiff believes the ALJ erred by failing to discuss the impact of the Plaintiff's obesity on his degenerative disc disease, contending that the Plaintiff's impairments meet or equal listing 1.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket Entry 18, p. 16).

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 761 (6th Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An impairment medically equals a listed impairment if it meets or exceeds the severity and duration requirements of the most similar

listed impairment. 20 C.F.R. § 404.1526(a); *see also Zebley*, 493 U.S. at 531; *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

So long as it is apparent that the ALJ actually considered the claimant's medical impairments at step three, the Sixth Circuit does not require the ALJ to "spell[] out every consideration that went into the step three determination." *Bledsoe v. Barnhart*, 165 F. App'x 408, 410-11 (6th Cir. 2006). The ALJ's factual findings throughout the ALJ's decision may be used to support the ALJ's step three conclusion. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014); *Bledsoe*, 165 F. App'x at 411; *Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011). This Court has upheld single-sentence conclusions at step three when it was readily apparent that claimant did not meet or equal a listed impairment. *See Staggs*, No. 2:09-CV-00097, 2011 WL 3444014, at *3-4 (upholding the ALJ's conclusion that "[t]he claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity" because the evidence in the record was insufficient to indicate a listed impairment); *see also Lawson v. Comm'r of Soc. Sec.*, No. 3:13-CV-197-PLR, 2014 WL 3696380, at *2-3 (E.D. Tenn. July 22, 2014).

The ALJ's analysis at step three is supported by substantial evidence. The ALJ found that the Plaintiff had two severe impairments: obesity and back problems, but concluded that the Plaintiff did not have an impairment or combination of impairments that meet or equal a listed impairment because "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments **of listing level severity**." (Docket Entry 11, p. 42-43) (emphasis added). Following the Sixth Circuit's lead in *Bledsoe v. Barnhart* and *Forrest v. Commissioner of Social Security*, the ALJ's conclusion at step three should be read in connection with the findings of fact made throughout the ALJ's opinion. Reviewing the ALJ's summary of

the record, it is apparent that the ALJ considered all of the Plaintiff's impairments, including his obesity. (Docket Entry 11, p. 43-46). In fact, the ALJ emphasized Dr. Li's suggestion that the Plaintiff's obesity caused much of his pain and that the pain could be treated by weight loss. (Docket Entry 11, p. 43).

Further, substantial evidence supports the ALJ's conclusion that the Plaintiff did not fall within a listed impairment. The criteria of Listing 1.04 are as follows:

> **Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), **resulting in compromise of a nerve root** (including the cauda equina) **or the spinal cord. With:**
>
> > A. Evidence of **nerve root compression** characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, **motor loss (atrophy with associated muscle weakness or muscle weakness)** accompanied by **sensory or reflex loss** and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); **or**
> >
> > B. **Spinal arachnoiditis**, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; **or**
> >
> > C. **Lumbar spinal stenosis** resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in **inability to ambulate effectively, as defined in 1.00B2b.**

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (emphasis added). At step three, the burden of proof is on the Plaintiff. *Johnson*, 652 F.3d at 651. As the ALJ concluded, the evidence submitted by the Plaintiff does not meet the severity of these requirements.

With respect to § 1.04A, the evidence does not support a finding that the Plaintiff suffered muscle atrophy or sensory or reflex loss. Inspections of the Plaintiff's lower extremities revealed full strength, intact sensation and reflexes, and no muscular atrophy. (Docket Entry 11, p. 43, 45, 224, 226, 272, 276, 281, 286, 287, 289, 290, 386). It does not appear that the Plaintiff was ever diagnosed with spinal arachnoiditis, an essential element of § 1.04B. Moving on to §

1.04C, the Plaintiff has not established that he is unable to ambulate effectively. For purposes of the listings, an individual cannot ambulate effectively if he requires two-hand assistive ambulatory devices such as a walker, two crutches, or two canes. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b). The Plaintiff has been able to ambulate without an assistive device and has been repeatedly reported as having a normal gait. (Docket Entry 11, p. 45, 261, 374, 383, 392, 395, 398, 423, 435, 439, 451, 454). In his function report, the Plaintiff noted that he uses a cane or walking stick because it helped slightly but denied using crutches or a walker. (Docket Entry 11, p. 189). Although the Plaintiff suffers from obesity and back problems, the Plaintiff did not provide sufficient evidence to support a finding that these impairments, individually or combined, met or medically equaled a listed impairment. The ALJ's conclusion is supported by substantial evidence.

### C.  The ALJ Gave Appropriate Weight to Dr. Jain's Medical Source Statement

The Plaintiff argues that the ALJ erred in giving minimal weight to Dr. Jain's medical source statement because Dr. Jain was a treating physician. (Docket Entry 18, p. 16-18).

As part of the disability determination, the ALJ considers the medical opinions submitted by the claimant. 20 C.F.R. §§ 404.1527(b) and 416.927(b). If the ALJ concludes that the claimant's treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ must give the opinion controlling weight. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). Should the ALJ give a treating physician's opinion less than controlling weight, the ALJ must consider the following factors in determining how much weight to give the opinion: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship;

whether the opinion is supported by medical evidence; whether the opinion is consistent with the record as a whole; they physician's specialization; and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). The ALJ must provide "good reasons" for the weight given to the treating source's opinion, and the ALJ's decision should be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

It is undisputed that Dr. Jain was a treating physician. (Docket Entry 21, p. 10). The ALJ discussed the weight given to Dr. Jain's medical source statement in the following:

> The undersigned acknowledges **family physician** Dr. Jain's overly restrictive August 2012 medical source statement (Exhibit 15F). The undersigned accords **minimal weight** to Dr. Jain's opinion because **he restricted claimant secondary to his subjective complaints of pain rather than objective medical evidence of record**. Additionally, Dr. Jain **is not a neurosurgeon or orthopedist**.

> Dr. Jain limited claimant to less than sedentary work with ability to stand/walk only two hours in an 8-hour workday and sit for about four hours in an 8-hour workday. The physician assessed claimant with disc disease of the lumbar spine and severe facet joint disease. **The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.** The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. Another reality is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physician, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case[.]

(Docket Entry 11, p. 43-44) (emphasis added).

The ALJ provided good reasons for giving Dr. Jain's medical source statement minimal weight. Not only was the statement inconsistent with Dr. Jain's treatment notes and other evidence in the record, but it was also based on the Plaintiff's reports of pain which the ALJ did not find credible. The ALJ's credibility assessment is provided later in the ALJ's decision. (Docket Entry 11, p. 44-46). It is also apparent that the ALJ considered the relevant factors in determining how much weight to give Dr. Jain's opinion. The ALJ remarked that the Plaintiff had received treatment for back pain, obesity, and other complaints from Dr. Jain from October 2010 to November 2012. (Docket Entry 11, p. 45). Dr. Jain, the ALJ noted, treated the Plaintiff with a continuous flow of pain medication. (Docket Entry 11, p. 45). The ALJ noted that Dr. Jain was a family physician, not a specialist in back pain, such as a neurosurgeon or orthopedist. (Docket Entry 11, p. 43). Further, the ALJ noted that Dr. Jain's opinion departed substantially from the rest of the evidence in the record. (Docket Entry 11, p. 44).

Notably, Dr. Jain's medical source statement was contradicted by his own treatment records. Although Dr. Jain reported in the medical source statement that the Plaintiff's pain would constantly affect his attention and concentration (Docket Entry 11, p. 429), Dr. Jain's treatment reports reveal that the Plaintiff's attention span and ability to concentrate were normal. (Docket Entry 11, p. 277, 319, 392, 398, 423, 440, 451, 458). This was so even though the Plaintiff rated his pain a six out of ten, a seven out of ten, an eight out of ten, and a ten out of ten. (Docket Entry 11, p. 319, 392, 398, 423, 451, 458). Additionally, Dr. Jain stated that the Plaintiff would not be able to tolerate even a low stress job. (Docket Entry 11, p. 429). The Plaintiff's own function report, however, stated that the Plaintiff handles stress fine. (Docket Entry 11, p. 189). Dr. Jain also stated that the Plaintiff would need to take a half hour long break every half hour during the working day. (Docket Entry 11, p. 429). Even the Plaintiff did not report such a

restriction in his function report. The Plaintiff stated that he could stand or sit for up to an hour and that he required ten to fifteen minute breaks while walking. (Docket Entry 11, p. 183, 188). Further, Dr. Jain frequently noted that the Plaintiff ambulated with a normal gait, had intact reflexes, and had no muscle atrophy. (Docket Entry 11, p. 276, 281, 286-287, 289-290, 319). The evidence in the record did not support the extreme limitations found by Dr. Jain.

On top of that, no other physicians noted such severe functional limitations. Dr. Jain stated that the Plaintiff was limited to a less than sedentary level of exertion. (Docket Entry 11, p. 44, 428). Dr. Li, a neurosurgeon, suggested the Plaintiff's pain was caused by his weight and could be treated by losing weight. (Docket Entry 11, p. 272-273). Dr. Li did not recommend surgery. (Docket Entry 11, p. 273). Two State agency medical consultants, Dr. Settle and Dr. Fletcher, and a State vocational consultant opined that the Plaintiff could perform a range of light work. (Docket Entry 11, p. 43, 198, 262-270, 329). Although the ALJ is not bound by the findings of State agency medical consultants, the ALJ must nevertheless consider their findings because they "are highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i).

The ALJ did not, however, completely reject Dr. Jain's statement. Several limitations from Dr. Jain's statement were incorporated into the Plaintiff's RFC assessment, including restrictions on the Plaintiff's ability to climb, balance, kneel, and be exposed to hazards. (Docket Entry 11, p. 43, 430-431). Substantial evidence supports the ALJ's decision to give Dr. Jain's statement minimal weight.

### D.  The ALJ Correctly Considered Dr. Settle's Functional Assessment

The ALJ partially accepted the functional limitations suggested by Dr. Settle, a nonexamining State medical consultant. (Docket Entry 11, p. 43). At issue is the ALJ's decision

to exclude Dr. Settle's remark that the Plaintiff would require a cane to balance on uneven surfaces. (Docket Entry 11, p. 263) (Docket Entry 18, p. 18).

Substantial evidence supports the ALJ's RFC assessment which did not include this cane restriction. Opinions of nonexamining sources are considered in accordance with 20 C.F.R. §§ 404.1527(e) and 416.927(e). In line with 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii), the ALJ explained that great weight was given to Dr. Settle's opinion because it was consistent with the medical evidence suggesting that the Plaintiff could perform a range of light work. (Docket Entry 11, p. 43). As already discussed, the Plaintiff's medical providers repeatedly reported that the Plaintiff ambulated without assistive devices, and no ambulatory assistive devices were prescribed to the Plaintiff. Even Dr. Settle noted Dr. Keown's consultative examination report which stated that the Plaintiff ambulated without assistive devices. (Docket Entry 11, p. 269). Substantial evidence supports the ALJ's RFC assessment which did not include this cane restriction.

### E.  The ALJ Identified a Significant Number of Jobs Available to the Plaintiff

The Plaintiff argues that the ALJ failed to identify a significant number of jobs in the region compatible with the Plaintiff's RFC, age, education, and work experience. (Docket Entry 18, p. 19). This argument is premised on the vocational expert's testimony that the Plaintiff could perform 1,347 jobs in Tennessee and 88,677 jobs in the nation. (Docket Entry 11, p. 77) (Docket Entry 18, p. 19).

 If the Commissioner determines that the claimant cannot perform past relevant work, the Commissioner must then prove that the claimant can make an adjustment to "other work" in order to show that the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); *Johnson*, 652 F.3d at 651; 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). Based on the

claimant's RFC, age, education, and work experience, the Commissioner must show that the claimant can adjust to jobs that "exist in significant numbers in the national economy (either in the region where [the claimant] live[s] or in several regions in the country)." 20 C.F.R. §§ 404.1560(c) and 416.960(c). The Commissioner may employ the services of a vocational expert to satisfy this burden. *Id.* §§ 404.1566(e) and 416.966(e). The Sixth Circuit has recognized that there is no magic number of jobs required to satisfy the threshold; rather, the inquiry should be made on a case-by-case basis. *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The decision is left to the ALJ's common sense, but the ALJ may consider "the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Hall*, 837 F.2d at 275. These factors are merely suggestions, however; the ALJ is not required to consider them. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).

The vocational expert's testimony provides substantial evidence for the ALJ's conclusion that the Plaintiff can perform a significant number of jobs, or "other work." The hypotheticals posed to the vocational expert were based on the Plaintiff's RFC. From the ALJ's explanation of the RFC, it is clear that the ALJ considered the level of the Plaintiff's disability and the reliability of the Plaintiff's testimony. The ALJ found the Plaintiff's "allegations of disabling symptoms and limitations . . . unacceptable" and the Plaintiff's "complaints of pain . . . not credible." (Docket Entry 11, p. 46). Although the number of jobs identified by the vocational expert is by no means at the generous end of the spectrum, they are still within the ranges of a significant number. *Compare Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir.

2006) (870 jobs regionally and 107,826 jobs nationally may be significant), *Harmon*, 168 F.3d 291 (700 jobs within 75 miles of the claimant's home and 700,000 jobs nationwide were significant), *Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990) (125 jobs in the region and 400,000 jobs nationwide were significant), *Hall*, 837 F.2d at 275 (between 1,350 and 1,800 regional jobs were significant); *Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127, at *20 (E.D. Mich. Mar. 26, 2014) (1,000 jobs in state and 8,000 jobs nationally were significant); *and Putman v. Astrue*, No. 4:07-CV-63, 2009 WL 838155, at *3 (E.D. Tenn. Mar. 30, 2009) (200 to 250 regional jobs and 75,000 national jobs were significant), *with Malone v. Astrue*, No. 3:10-CV-01137, 2012 WL 1078932, at *6 (M.D. Tenn. Mar. 30, 2012) (239 regional jobs and 16,900 jobs were not significant), *Lenon v. Apfel*, 191 F. Supp. 2d 968, 979 (W.D. Tenn. 2001) (65 jobs were not significant), *and W. v. Chater*, No. C-1-95-739, 1997 WL 764507, at *3 (S.D. Ohio Aug. 21, 1997) (100 jobs locally, 1,200 jobs statewide, and 45,000 jobs nationally were not significant). Substantial evidence supports the ALJ's conclusion that the Plaintiff can perform a significant number of jobs in the national economy.

### F. The ALJ Correctly Assessed the Plaintiff's Credibility

The Plaintiff claims that the ALJ erred in finding that the Plaintiff was not credible in his complaints of pain. (Docket Entry 18, p. 19-21).

The ALJ did not err by assessing the Plaintiff's complaints of pain under 20 C.F.R. §§ 404.1529 and 416.929. The Sixth Circuit has held on multiple occasions that subjective claims of pain may be analyzed under the *Duncan* test[4] or by the standards in 20 C.F.R. §§ 404.1529 and 416.929. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 835 (6th Cir. 2005); *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005); *McCoy on Behalf of McCoy v. Chater*, 81 F.3d

---

[4] *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

44, 47 (6th Cir. 1995). In the present case, the ALJ chose to apply 20 C.F.R. §§ 404.1529 and 416.929. (Docket Entry 11, p. 44-46).

Substantial evidence supports the ALJ's evaluation of the Plaintiff's complaints of pain. Application of the regulations to claims of pain requires a two-step approach. First, medical signs or laboratory findings must show that the claimant suffers from medically determinable impairments which could reasonably be expected to result in the alleged symptoms. 20 C.F.R. §§ 404.1529(b) and 416.929(b). Once that is established, the intensity and persistence of these symptoms is evaluated to determine what functional limitations, if any, they place on the claimant. *Id.* §§ 404.1529(c)(1) and 416.929(c)(1). All relevant evidence must be considered. *Id.* §§ 404.1529(c) and 416.929(c). The following factors may be considered: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors; the effectiveness of medication or other treatment; other measures to relieve the pain; and any other relevant factors. *Id.* §§ 404.1529(c)(3) and 416.929(c)(3); *see also* SSR 96-7P, 1996 WL 374186, at *3 (S.S.A. July 2, 1996). The ALJ's credibility assessments are given great deference. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

The ALJ found that the Plaintiff suffered from medically determinable impairments which could reasonably be expected to cause some of the alleged symptoms. (Docket Entry 11, p. 45). The Plaintiff, thus, satisfied the first step. After reviewing the medical record, the Plaintiff's daily activities, the Plaintiff's medical treatment regimen, and the Plaintiff's failure to follow physicians' instructions to lose weight and quit smoking, the ALJ concluded that the Plaintiff's complaints of pain were not credible. (Docket Entry 11, p. 46). Specifically, the ALJ noted that the Plaintiff's function report and hearing testimony did not allege the same limitations. (Docket Entry 11, p. 46). From the function report, the ALJ summarized that the

Plaintiff makes meals, does laundry, visits his friend every week, talks on the phone, watches television, and cares for his son three days each week. (Docket Entry 11, p. 46). However, at the administrative hearing, the Plaintiff had testified that he does nothing except take his son outside for fifteen minutes and that he spends most of the day lying down. (Docket Entry 11, p. 46). The ALJ also noted inconsistent statements the Plaintiff had made about his ability to walk. (Docket Entry 11, p. 43, 269). Whereas the Plaintiff stated in a function report that he could not walk more than 100 yards, he told Dr. Jain that he could walk up to one half of a mile. (Docket Entry 11, p. 43, 192, 242).

Additionally, the ALJ emphasized the Plaintiff's failure to comply with medical care providers' recommendations that he lose weight and quit smoking. (Docket Entry 11, p. 46). Claimants must follow prescribed treatments if they can enable to claimant to work. 20 C.F.R. §§ 404.1530(a) and 416.930(a). Failure to follow prescribed treatment without good reason will result in a finding of not disabled. *Id.* §§ 404.1530(b) and 416.930(b). Cases applying these regulations have suggested that noncompliance with prescribed treatment may indicate less severity than alleged. *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014); *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (claimant who did not follow physician's instructions to lose weight and quit smoking not found disabled); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (claimant not disabled when his physical problems could significantly improve by using prescribed drugs); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967) ("An impairment that can be remedied by treatment will not serve as a basis for a finding of disability."). Both Dr. Li and the Plaintiff's treating physicians advised the Plaintiff to lose weight and emphasized diet and exercise. (Docket Entry 11, p. 272-273, 309, 316, 452, 455). According to Dr. Li, the Plaintiff's excess weight placed

stress on the Plaintiff's spine, and the pain may be treated with weight lifestyle modifications. (Docket Entry 11, p. 272-273). The Plaintiff was also instructed to quit smoking tobacco products. (Docket Entry 11, p. 309). The ALJ found that the Plaintiff had not followed through with the recommendations to lose weight and quit smoking. (Docket Entry 11, p. 46).

The Plaintiff correctly points out a factual error made by the ALJ in assessing Dr. Li's recommendation of physical therapy. (Docket Entry 11, p. 43). Dr. Li referred the Plaintiff to a physical therapist for four to six weeks. (Docket Entry 11, p. 273). The ALJ appears to fault the Plaintiff for only participating in this physical therapy for two months. (Docket Entry 11, p. 43). To the extent that the ALJ's credibility determination is based on this misunderstanding, it is harmless error. Substantial evidence supports the ALJ's decision. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (upholding ALJ's credibility analysis despite a partially invalid reason because the analysis was nevertheless supported by substantial evidence); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

## V. Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 17) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may

constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155

*reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 9th day of November, 2015.

s/ Joe B. Brown
Joe B. Brown
U.S. Magistrate Judge